**In re the State of TEXAS.**

**No. 5:00 CV 118.**

United States District Court, E.D. Texas, Texarkana Division.

Aug. 15, 2000.

William Andrew Taylor, Attorney General Office, Austin, TX, for State of Texas.

David Grant Kaiser, Kaiser & Morrison, PC, Houston, TX, Michael E. Tigar, Jane Blanksteen Tigar, Tigar Law Firm, Washington, DC, for Real Parties, Real Parties in Interest including Walter Umphrey, John O'Quinn, John Eddie Williams, Wayne Reaud and Harold Nix.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

Before the Court is the State of Texas's (the "State") "Emergency Motion to Remand," (Dkt. No. 16). The State argues that this Court lacks jurisdiction over a state-court proceeding initiated to investigate the conduct of several private attorneys. After consideration, the Court concludes that it does have jurisdiction over the instant proceeding. The State's motion to remand is therefore denied.

## BACKGROUND

### I

The genesis of this matter is a March 22, 1996 agreement between then-Texas attorney general Dan Morales and several private attorneys (hereinafter "Private Counsel"), which called for the attorneys to represent the State in its suit against the tobacco industry. Specifically, the agreement—titled the Outside Counsel Agreement or "OCA"—required Private Counsel to advance all costs and expenses (up to $10 million) associated with prosecuting the suit. (See No. 5:96–CV–91, Dkt. No. 1853, Ex. A(OCA), at 1.) The OCA provided that Private Counsel were enti-tled to a 15% share of the State's total recovery plus reimbursement for expenses. (OCA, Ex. B, at 5, ¶¶ 1 & 3.) The OCA further provided that Private Counsel were prohibited from undertaking any work "which would create a conflict of interest for Counsel or the Attorney General . . . .[and that] Counsel [ ] agree to inform their clients of any case involving a potential conflict." (OCA at 1, ¶ 4.)

On March 26, 1996, Private Counsel, on behalf of the State, filed suit in this Court against the tobacco industry. See Texas v. American Tobacco Co., No. 5:96–CV–91 (E.D.Tex.)(the "tobacco litigation"). During the 22 months that followed, the tobacco litigation generated nineteen hundred docket entries, including thousands of pages of briefing. Approximately 23 million documents were produced, hundreds of depositions were taken, 50,000 exhibits were listed, and 1,500 witnesses were designated. Four hundred seventy-two motions were filed and 21 hearings were conducted. Four hundred fifty hours—or about six months—were allotted for trial of the case.

In late 1997, the week before jury selection was scheduled to begin, and with a nationwide tobacco settlement in the works that threatened to limit the State's recovery, the State and the industry achieved a settlement. The settlement called for the State to dismiss its claims against the tobacco industry in exchange for $15.3 billion. The terms of the settlement were memorialized in the Comprehensive Settlement and Release ("CSA"). Finalization of the CSA was made contingent upon Court approval. On January 22, 2000, the Court entered final judgment in the tobacco litigation and adopted and incorporated the CSA as an enforceable order. (See Final Judgment, 5:96–CV–91, Dkt. No. 1866, Jan. 22, 1998, at 1–2.) The approval order states:

It is [ ] ordered that this Court shall have exclusive jurisdiction over the provisions of the Comprehensive Settlement

Agreement and Release, this Order[,] and the Final Judgment. All persons in privity with the parties, including all persons represented by the parties, who seek to raise any objections or challenges in any forum to any provision of this Judgment are hereby enjoined from proceeding in any other state or federal court.

(*Id.*, Ex. B (Agreed Order Granting Joint Motion to Approve Settlement Agreement).) Similarly, the first paragraph of the CSA states:

Settling Defendants and the State of Texas acknowledge that this Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and this Court shall retain jurisdiction for the purposes of implementing and enforcing this Settlement Agreement. The parties hereto agree to present any disputes under this Settlement Agreement, including without limitation any claims for breach or enforcement of this Settlement Agreement, exclusively to this Court.

(*Id.*, Ex. A(CSA), at 4, ¶ 1.) Paragraph 3 of the CSA states that "[t]he State of Texas and the Settling Defendants acknowledge and agree that this Settlement Agreement is voluntarily entered into by all parties hereto as the result of arm['] s[-] length negotiations during which all such parties were represented by counsel." (CSA at 5, ¶ 3.) The CSA further states that "[t]he settlement negotiations resulting in this Settlement Agreement have been undertaken by the parties hereto in good faith and for settlement purposes only...." (CSA at 23, ¶ 22.)

Paragraph 17 of the CSA states:

(a) Reimbursement of Costs and Expenses. Settling Defendants will reimburse ... Private Counsel for reasonable costs and expenses incurred in connection with this litigation, provided that such costs and expenses are of the

same nature as costs and expenses for which Settling Defendants would reimburse their own counsel or agents.... In addition, within 30 days after the date of this Settlement Agreement, Settling Defendants shall ... pay to [Private Counsel] an amount equivalent to Private Counsel's best estimate of their reasonable costs and expenses.... Private Counsel shall provide Settling Defendants with an approximately documented statement of their costs and expenses....

(CSA at 19–20, ¶ 17(a).) Regarding protective orders associated with the tobacco litigation, the CSA provides that

any restrictions imposed by any protective order in this action governing treatment of discovery materials during the pendency of this action shall remain in effect, and existing confidentiality designations shall remain undisturbed until ... [not later than] December 31, 1999. Thereafter, any party to the action may make any motion with respect to discovery materials....

(CSA at 23–24, ¶ 22; *see also* Final Confidentiality Order, Dkt. No. 632, July 3, 1997.)

On January 16, 1998, Private Counsel submitted a motion for approval of their attorneys' fees. On January 22, 1998, the Court entered a memorandum opinion and order which concluded that the amount of attorneys' fees Private Counsel was due under the OCA—about $2.3 billion—was reasonable. (*See* Final Judgment Ex. C.[1]) In its January 22 memorandum, the Court acknowledged Private Counsel's claim that they incurred approximately $40 million in out-of-pocket expenses prosecuting the tobacco litigation. (*Id.* at 10.)

Shortly thereafter, on January 30, 1998, a mandamus action in the Texas Supreme Court filed by a group of Texas legislators was removed to this Court. *See In re*

---

**1.** Pursuant to party agreement, the Court's memorandum opinion and order was vacated

May 16, 2000.

*Fraser,* No. 5:98–CV–45 (E.D.Tex.). The legislators had asked the Texas court to require Attorney General Morales to declare that the attorney general of Texas had no statutory or constitutional authority to bind the State to a contingent fee arrangement for legal services. The legislators argued that removal of the mandamus action to federal court would violate the Eleventh Amendment since the suit sought to compel a state officer to act according to state law. The legislators also argued that the OCA's contingent fee provision was unenforceable because the State, via the Eleventh Amendment, was immunized against being sued in federal court. The same legislators, on February 5, 1998, along with Governor George W. Bush, separately, moved to intervene in the tobacco litigation. The interveners, raising much the same issues as those raised in *In re Fraser,* asked for a separate resolution of the attorneys' fees questions and that the Court stay the disbursement of the settlement funds until the fee issue was resolved. Shortly thereafter, the Court stayed enforcement of the CSA.

On June 22, 1998, an agreement was achieved between the antagonists to the attorneys'-fees issue (the "Agreement"). Under the Agreement, Private Counsel were presented with a choice: they could either attempt to enforce the contingent fee provision in the OCA, or they could elect to take an amount awarded by an arbitration panel. (*See* Order, No. 5:98–CV–270, Dkt. No. 1, Ex. A, at 3–4, ¶ E.) If they chose the latter, the tobacco industry would pay the panel award and Private Counsel would waive any claim they might have had against the State under the OCA. (*Id.*) The Agreement also provided that all pending motions pertaining to the fee dispute would be stayed until Private Counsel made their election. (*Id.* at 2–3, ¶ B.) The Agreement further provided that the fee dispute would be "severed" from the tobacco litigation. (*Id.* at 2, ¶ A.) On July

24, 1998, the Court adopted the Agreement and separated the fee issues from the tobacco litigation. *See In re Private Counsel Fee Agreement,* No. 5:98–CV–270 (E.D.Tex.)("*In re Private Counsel* ").

On December 15, 1998, the panel awarded Private Counsel $3.3 billion in fees. Under the Agreement, Private Counsel had until December 30 to make their election. On December 30, Private Counsel filed a motion to extend the election deadline.[2] The State opposed the motion and argued that the Court could not consider an extension until the Court first ruled on the State's challenges to the Court's jurisdiction. On November 5, 1999, the Court concluded that the State's jurisdictional arguments were without merit. *See In re Fraser,* 75 F.Supp.2d 572 (E.D.Tex.1999); *In re Private Counsel,* 1999 WL 1022131 (E.D.Tex.). Also on November 5, the Court gave Private Counsel until November 19 to make its election under the Agreement. *See In re Private Counsel,* 1999 WL 1022128 (E.D.Tex.). On November 19, 1999, Private Counsel elected to take the panel award and to waive their right to sue under the OCA. On December 6, 1999, the State appealed the Court's November 5 ruling to the U.S. Court of Appeals for the Fifth Circuit. The Fifth Circuit recently dismissed the State's appeals and vacated this Court's November 5 orders.

## II

On April 27, 2000, the State filed a document entitled "Petition Requesting an Order Authorizing Oral Depositions to Investigate Potential Claims or Suit" in the District Court of Harris County, Texas. (*See* Pet. at 1.) The petition moves the state district court, pursuant to Tex.R. Civ. P. 202, to allow the State to "investigate potential claims it believes it may possess for conversion and breach of fiduciary

---

2. In the interim, Texas voters elected a new attorney general. On January 13, 1999, the new attorney general was sworn-in; soon

thereafter, he joined in support of the Governor's and the legislators' arguments in all significant respects.

duty" against Private Counsel. (*Id.*) Specifically, the State seeks to depose Private Counsel as to

- whether the parties to the OCA engaged in the improper exchange of consideration so that Private Counsel could obtain the contract;

- whether Private Counsel knew or should have known that the OCA was unenforceable;

- whether Private Counsel used the relationship[3] to benefit their own personal interests to the detriment of the State, and how Private Counsel improperly used the relationship to benefit their own personal interest to the detriment of the State;

- which tobacco litigation documents are being withheld from the State; the subject matter of those documents; the circumstances underlying the reason for withholding the documents; the circumstances under which the documents were created; and where the withheld documents are being kept;

- whether documentation exists which supports the expenditure of $40 million in expenses; and

- other relevant areas of inquiry.

(Pet. at 4.) On April 28, 2000, Private Counsel removed the state-court proceeding to this Court. Private Counsel contend that this Court has jurisdiction over the State's petition because (1) the petition raises a question of federal law and is therefore removable pursuant to 28 U.S.C. § 1441; (2) the matters raised in the petition are ancillary and supplemental the tobacco litigation and the Court's orders entered therein; and (3) the petition implicates the orders of this Court and is therefore subject to removal under the All Writs Act, 28 U.S.C. § 1651. On May 12, 2000, the State filed the instant motion to remand.

---

**3.** Presumably, "the relationship" refers to the attorney-client relationship that arose from

## DISCUSSION

In its motion to remand, the State argues that this Court lacks jurisdiction over the instant proceeding because (1) the proceeding is not a "civil action"; (2) no question of federal law is raised on the face of the State's well-pleaded petition; (3) this matter should have been removed to the district and division embracing the state court where the State filed its petition; (4) removal is not proper under the All Writs Act; and (5) the Eleventh Amendment is a bar to removal. The Court will address each argument in turn.

### I

The removal statute, 28 U.S.C. § 1441, provides, in relevant part:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. * * *

The State argues that its petition does not initiate a "civil action" under § 1441 because a Rule 202 proceeding lacks the characteristics of a "full-blown lawsuit."

### A

*1.* The first place the Court must turn to address the State's argument is the removal statute itself. *See* 16 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE AND PROCEDURE § 107App.101[2] ("Whether a state proceeding is a civil action, for removal purposes, and has been properly removed involves the construction of the removal statute...."). The text of § 1441 does not define the term "civil action." The Court notes, however, that the term is not used exclusively in the removal statute and associated sections. For example,

---

Private Counsel's contract with the State.

§§ 1442–1443 & 1446 speak of "civil actions" and "criminal prosecutions," which suggests that the term "civil action" is meant not to define a civil proceeding with certain level of involvement, but instead to distinguish civil proceedings from criminal ones. Section 1446(b), on the other hand, which provides the deadlines for removal in civil matters, speaks of both "actions" and "proceedings," which might suggest that some non-criminal proceedings are something less than "actions."

2. As the statute is less-than-definitive on the question of what is a civil action, the Court turns to legislative history and case law.[4] The words "civil action" were not used to the exclusion of other terms until 1948, when the modern-day version of the removal statute was enacted. The first removal provision, which was contained in the Judiciary Act of 1789, permitted removal of "suits" against aliens or where there was diversity of citizenship. In *Weston v. City Council of Charleston*, 27 U.S. (2 Pet.) 449, 464, 7 L.Ed. 481 (1829), the Supreme Court concluded that the term "suit" "is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice, by which an individual pursues that remedy in a court of justice, which the law affords him." In *Weston*, the plaintiffs, in state court, filed a "suggestion for a prohibition," an equity proceeding through which plaintiffs prayed that the city council be barred from assessing an allegedly unconstitutional tax. *Id.* at 449. The prohibition was granted, and appeal was taken to South Carolina's high court. The South Carolina court upheld the constitutionality of the tax, and plaintiffs, in turn, appealed to the Supreme Court. The question for the Court, then, was whether under the provision of the 1789 act in question, a writ of prohibition was a "suit." *Id.* at 463. Chief Justice Marshall, writing for the Court, construed the term "suit" broadly.

That plaintiffs did not couch their pleading as stating a cause of action at law, and instead initiated an equity proceeding, made no difference to the Chief Justice: "The modes of proceeding may be various, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought, is a suit" *Id.*

In 1875, the statute was re-enacted to provide for the removal of "any suit of a civil nature, at law or in equity." *See* 16 Moore's § 107App.101[2] n. 7. In *Upshur County v. Rich*, 135 U.S. 467, 10 S.Ct. 651, 34 L.Ed. 196 (1890), the Court was again faced with the meaning of the term "suit." In that case, the Court concluded that an appeal of a tax assessment to a state's "county court" was not a "suit" because the proceeding lacked the indicia of a judicial tribunal. *Id.* at 470, 10 S.Ct. 651. The Court reasoned that a necessary element of a removable proceeding is that it be before a bona fide court; that is, there must a dispute between litigants before a tribunal that has the power to determine questions of law and fact. *Id.* at 477, 10 S.Ct. 651. The "county court" in *Upshur County*, conversely, was an administrative tribunal and had "no[ ] judicial powers, except in matters of probate." *Id.* at 471, 10 S.Ct. 651.

In 1911, the removal statute was again revisited; like the 1875 act, the 1911 statute contained the language "any suit of a civil nature, at law or in equity." *See* 16 Moore's § 107App.101[2] n. 10. In *Commissioners of Road Imp. Dist. No. 2 of Lafayette County v. St. Louis Southwestern Railway Co.*, 257 U.S. 547, 42 S.Ct. 250, 66 L.Ed. 364 (1922), the Supreme Court considered whether a county-court hearing constituted a removable "suit." In *Lafayette County*, the county commissioners assessed a tax on land belonging to Southwestern Railway. *Id.* at 550, 42 S.Ct. 250. The commissioners notified

4. The Court's discussion of the history of the removal statute tracks volume 16 of Moore's

Federal Practice, section 106.

landowners that a hearing on the assessment would be held in county court. The day before the hearing, the railroad removed the proceeding to federal district court; the commissioners' motion to remand that followed was denied. Writing for the Court, Chief Justice Taft described the characteristics of the county-court proceeding: it involved a dispute between parties, the commissioners on one side, the landowners on the other; there were pleadings—namely, the record of the commissioners' assessment plus the landowners' objections thereto; the court was to conduct an inquiry into reasonableness of the assessment; the court's determination was an enforceable order; and the determination is subject to review on appeal. *Id.* at 557 & 559, 42 S.Ct. 250. The proceeding, the Court concluded, had "all the elements of a judicial controversy." *Id.* at 557, 42 S.Ct. 250.

The Lafayette County commissioners, however, argued that the state supreme court had already determined that the proceedings like the one at issue did not constitute a removable suit. *Id.* at 557, 42 S.Ct. 250. The Court dismissed the commissioners argument:

> The question of removal under the federal statute is one for the consideration of the federal court. It is not concluded by the view of a state court as to what is a suit within the statute. While the decision of the state court as to the nature of a proceeding under state statutes sought to be removed is, of course, very persuasive, it is not controlling....

*Id.* at 557–58, 42 S.Ct. 250. The commissioners also argued that the proceeding—a prove-up on a tax assessment—could not be removed since it could not have been originally filed in federal district court. *Id.* at 561, 42 S.Ct. 250. Chief Justice Taft responded that the removal statute's requirement of original jurisdiction

> is not intended to exclude from the right of removal defendants in cases in the state court which, because of their peculiar form would be awkward as an original suit in a federal court, or would require therein a reframing of the complaint and different procedure. The limitation is that only those proceedings can be removed which have the same essentials as original suits permissible in District Courts; that is that they can be readily assimilated to suits at common law or equity....

*Id.* at 561–62, 42 S.Ct. 250.

Along the same lines, in *English v. Supreme Conclave Improved Order of Heptasophs*, 235 F. 630 (D.N.J.1916), a district court considered the qualities that make a suit ripe for removal. In *English*, English sought a permanent injunction against the Heptasophs. *Id.* The court ordered the Heptasophs to show cause why it should not issue an injunction; the Heptasophs, in turn, removed the matter to federal district court. *Id.* In its motion to remand, English argued that under New Jersey law, a suit is not brought for removal purposes until a subpoena issues. The district court disagreed, stating that it is not for New Jersey law to determine whether removal under the federal statute is appropriate. Rather, the court turned to the posture of the state-court proceeding and noted that the Heptasophs were required to answer the show-cause order. *Id.* at 631. The district court concluded that "[w]hatever the form of proceeding to bring a defendant into court, a suit is brought when such defendant is subjected to judicial orders." *Id.*

To summarize, the Supreme Court has broadly construed the various terms used to describe removable proceedings. Specifically, the Court has said that a removable proceeding is one in which there are one or more of the following: a dispute between parties; a prayer for relief (either at law or in equity); pleadings; a tribunal with the power to determine questions of law and fact; the determination of the tribunal is subject to review; and enforceable orders. A removable proceeding is considered brought once a party is subject to court orders.

*3.* In 1948, what was to become the modern-day removal statute was enacted. *See* ch. 646, 62 Stat. 937 (June 25, 1948)(codified at 28 U.S.C. §§ 1441–1450). The 1948 act was "based on" and intended to "consolidate" its predecessors. *Id.* (reviser's notes). The 1948 act substituted "[p]hrases such as 'in suits of a civil nature, at law or in equity,' the words 'case,' 'cause,' 'suit,' and the like ... [from predecessor statutes for] the words 'civil action.'" *Id.* The change in terminology was meant to harmonize the removal statute with the Federal Rules of Civil Procedure, which became effective in 1938 and did away with the distinction between proceedings in law and those in equity. *Id.; see* Fed.R.Civ.P. 2 (declaring that there is one form of action). The change is believed not to have intended an affect on the breadth of the removal statute. *See* 16 Moore's § 107App.101[2] (referencing revisor's notes). Instead, the new term was aimed at distinguishing non-removable criminal actions from civil ones. *See id.; cf. Milwaukee County v. White Co.,* 296 U.S. 268, 270, 56 S.Ct. 229, 80 L.Ed. 220 (stating that the term "suits of a civil nature" from a predecessor removal statute "is used in contradistinction to 'crimes and offenses'...."). "In effect, therefore, the limitation to civil actions in Section 1441 may mean no more than that state court criminal, and perhaps penalty, actions are not removable...." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14B Federal Practice and Procedure § 3721 (3d ed.1998).

### B

█ Having gone through the history and meaning of the term "civil action" in excruciating detail, the Court turns to the proceeding in question. Generally, Rule 202 provides

A person may petition the court for an order authorizing the taking of a deposition on oral examination or written questions either:

(a) to perpetuate or obtain the person's own testimony or that of any other person for use in an anticipated suit; or

(b) to investigate a potential claim or suit.

Tex.R. Civ. P. 202.1. Parts two through five, 202.2–.5, provide the procedural requirements of the rule. A Rule 202 petitioner must, where suit is anticipated, determine the county where venue in the anticipated action would lie and file its petition with the county court there. *Id.* 202.2(b). The petitioner must state the subject matter of the anticipated action, *id.* 202(e), and give the names, addresses, and phone numbers of persons against whom petitioner expects to have adverse interests, *id.* 202.2(f)(1). The petitioner must state the substance of the testimony it expects to elicit, *id.* 202.2(g), and request a court order authoring the depositions requested, *id.* 202(h). Lastly, before the state court may authorize the taking of depositions, the court must find that

(1) allowing the petitioner to take the requested deposition may prevent a failure or delay of justice in an anticipated suit; or

(2) the likely benefit of allowing the petitioner to take the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure.

*Id.* 202.4(a).

Viewing Tex.R. Civ. P. 202 and its requirements in the context of the foregoing discussion of § 1441, the Court concludes that a Rule 202 proceeding is a "civil action." Rule 202 possesses all the elements of a judicial proceeding: there is a controversy between parties; there are pleadings (the State's petition); relief is sought (the State has prayed for a court order authorizing the taking of depositions); and a judicial determination is required—specifically, whether authorizing depositions may prevent injustice or, on balance, will not be

unduly burdensome.[5] Finally, both parties will be required to adhere to the state court's orders.

## C

1. Although the Fifth Circuit has not addressed the removability of Rule 202 proceeding, the Northern District of Texas has. *See Mayfield–George v. Texas Rehab. Comm'n,* No. 3:99–CV–3735X, 2000 WL 626853 (N.D.Tex. May 15, 2000). In *Mayfield–George,* Mayfield–George filed a Rule 202 petition in state court to investigate a possible claim against the Texas Rehabilitation Commission ("THC"). *Id.* at *1. The day before the state district court was to conduct a hearing on Mayfield–George's petition, THC, pursuant to § 1441(b), removed the proceeding to federal district court. In its motion to remand, Mayfield–George argued that a petition brought pursuant to Rule 202 is not a "civil action"; specifically, he argued that the petition does not assert a claim against THC, but instead merely seeks to take depositions of THC employees to determine whether a claim against THC would lie. *Id.* at *2–*3. In response, the attorney general's office, on behalf of THC, argued that the term "civil action" should be construed broadly. *See* THC's Resp. Mot. Remand at 2. The attorney general also emphasized that the Rule 202 proceeding was an independent action and that it cannot be ancillary to another state-court proceeding because no other state-court action was pending. *Id.* at 6. The

Honorable Joe Kendall, however, agreed with *Mayfield–George,* concluding that a Rule 202 proceeding cannot be a "civil action" as "it asserts no claim or cause of action upon which relief can be granted." *Id.; see also In re Hinote,* 179 F.R.D. 335, 336 (S.D.Ala.1998)(holding that in the absence of a complaint there can be no "civil action"); *Sunbeam Television Corp. v. Columbia Broadcasting Sys., Inc.,* 694 F.Supp. 889, 891 (S.D.Fla.1988)(same).

After considering *Mayfield–George* in light of the foregoing construction of the removal statute, the Court respectfully disagrees with the Judge Kendall's holding. In *Mayfield–George,* the court found that the assertion of a cause of action is an essential element of a removable action. This Court does not disagree; however, as discussed above, an asserted claim can take many forms. *See Weston, supra* at 449. The fact that a cause of action at-law has not been made, which was also the objection in *Hinote* and *Sunbeam Television,* cannot turn a proceeding that clearly has all the indicia of a judicial proceeding into something less. Rather than looking at one criteria in isolation, the Court must look at the proceeding as a whole. Here, among other things, there are pleadings, judicial determinations, and relief is sought, *see HMB Acquisition Corp. v. Cohen,* 143 F.R.D. 50, 51 (concluding that discovery provides substantive relief where a proceeding is instituted to obtain it), *vacated in part on other grounds,* 145 F.R.D. 30 (S.D.N.Y.1992). In short, the

---

5. In its petition, the State suggests that it has invoked Rule 202 to "investigate a potential claim or suit" (Pet. at 1.), as opposed to obtain testimony in advance of an "anticipated" suit. For example, the State's petition argues that the benefit of depositions outweighs the burden and expense they would impose (*id.* at 6), an argument which pertains to a determination used exclusively in cases where 202 is invoked to investigate a claim, *see* Tex.R. Civ. P. 202.4(a)(2). At other points in its petition, however, the State speaks as though it wants discovery for an anticipated suit. For instance, the State designates adverse parties (*id.* at 2–4) and states that venue is proper in Harris County (*id.* at 6). These

two disclosures are consistent with employing Rule 202 to prepare for an anticipated suit. The distinction is potentially important because the procedural requirements where suit is anticipated, compared with those to investigate a claim, are more stringent. And, as discussed above, the presence of the elements of a judicial controversy is an important factor in determining whether there is a civil action. Ultimately, however, the Court concludes the distinction is not determinative; under either the investigation or anticipated-suit prongs, the state court is required to make a judicial finding, which is *sin qui non* of a judicial proceeding.

instant proceeding has all the qualities of a "civil action."

2. The State also puts forth *Wilson v. Belin,* 20 F.3d 644 (5th Cir.1994) in support of its argument. In *Wilson,* Wilson, on September 3, initiated a Texas state-court discovery proceeding to determine whether he had a claim against Blakey. *Id.* at 646. On November 13, Wilson filed his complaint. On December 22, Blakey removed the state-court proceeding. The federal district court then granted Blakey's and his co-defendant's motion to dismiss on the grounds that the court lacked specific and personal jurisdiction. *Id.* On appeal, Blakey argued, *inter alia,* that removal was untimely. *Id.* at 651 n. 8. The Fifth Circuit, construing 28 U.S.C. § 1446(b), which provides the requirements for timely removal, concluded that as between the petition to initiate discovery and the complaint, it was the latter that started the 30–day deadline for removal since the complaint was "the first document stating a claim." *Id.; cf. Christian, Klein & Cogburn v. NASD, Inc.,* 970 F.Supp. 276, 278–79 (S.D.N.Y.1997)(Sotomayor, J.)(concluding that a petition for state-court pre-complaint discovery, standing alone, is an "initial pleading" under § 1446(b)).

Contrary to the State's argument, however, *Wilson*'s footnote does not stand for the proposition that a state-court discovery proceeding is not removable. *Wilson* addressed § 1446(b), which as noted provides deadlines for removal. Section 1446, however, does not define what kind of proceeding is removable; that is within the ambient of § 1441. Section 1441's removal criteria—*e.g.,* that the proceeding be a "civil action," and that the state tribunal be a "court"—do "not concern the broader although related question as to when defendant's time for removal will expire ...." *See* 16 Moore's § 107App.101[6]. Thus, a state-court proceeding can be a removable "civil action" under § 1441 even though the petition initiating the proceeding is not an "initial pleading" under § 1446(b). *See*

*id.* That the *Wilson* court concluded that it was Blakey's complaint, rather than his petition for discovery, that initiated the removal deadline does affect this Court's holding that the State's Rule 202 petition is a removable "civil action."

3. Finally, even though a state-court determination of state rule is not controlling for purposes of removal, the Court pauses to note that at least one Texas court has considered the nature of a Rule 202 proceeding. *See Valley Baptist Medical Ctr. v. Gonzalez,* 18 S.W.3d 673, 678 (Tex.App.—Corpus Christi, 1999, pet. filed Mar. 21, 2000). In *Valley Baptist,* which was relied upon by Judge Kendall in *Mayfield–George,* the court of appeals, considering its own jurisdiction, held that an order permitting the taking of depositions under Rule 202 is not reviewable on direct appeal because the "proceeding is not, in itself, a separate lawsuit, but is incident to and in anticipation of a suit." *See id.* at 676; *see also* Michol O'Connor, et al., O'Connor's Texas Rules, Civil Trials 1999 (1998) 351–53. The question of whether a proceeding is separate or ancillary to a state-court proceeding is important for purposes of removal: if the proceeding is separate, it is removable; if it is ancillary, it is not. *See* 14B Wright, et al. § 3721. The court's holding in *Valley Baptist* that a Rule 202 proceeding is ancillary, has, admittedly, been difficult for this Court to conceptualize: to say that a proceeding is ancillary to an investigation or an anticipated suit is to say that it is ancillary to nothing. Moreover, the court's holding runs counter to the conclusions of Justice Hecht, who is regarded as a leading expert on Texas's rules of procedure. *See* Nathan L. Hecht & Robert H. Pemberton, *A Guide to the 1999 Texas Discovery Rules Revisions* (Nov. 11, 1998)(stating that under Rule 202's predecessor, Rule 737, which Rule 202 "replaces and limits," "a person could bring an *independent action* to obtain an order authorizing a deposition of any other person to investigate a potential claim or anticipated lawsuit")(emphasis

added).[6] Anyhow, *Valley Baptist*'s precept that an order authorizing depositions pursuant to Rule 202 is interlocutory, is, at best, not dispositive; at worst it is inconsistent with this Court's analysis that a Rule 202 proceeding has all the indicia of a civil action under the removal statute.

## II

█ Having determined that a Rule 202 proceeding is a civil action, the Court turns to the question of whether the instant proceeding falls within the original jurisdiction of this Court. As an initial matter, the Court notes that the Fifth Circuit has held that "a claim brought in state court [that] seeks to attack or undermine an order of a federal district court" falls within the original jurisdiction of the district courts. *See Baccus v. Parrish*, 45 F.3d 958, 960 (5th Cir.1995)(citing § 1441(a) and *Villarreal v. Brown Express, Inc.*, 529 F.2d 1219, 1221 (5th Cir.1976)); *see also Nowling v. Aero Services Int'l, Inc.*, 734 F.Supp. 733 (E.D.La.1990)("[A] state[-]law claim is said to have federal character when ... it calls into question a federal court order."). In *Baccus*, the parties achieved a settlement agreement in a suit concerning Texas's state schools for the mentally retarded. *Id.* at 959. The agreement called for the state to close down two schools; the state later passed legislation that would form a panel to make recommendations regarding school closure. Final passage of the legislation was contingent upon the district court's acceptance of the settlement; court approval occurred sometime thereafter. Later, Baccus, in state court, sought to enjoin the panel, alleging that the composition of the panel and the law creating it were unlawful. The action was removed then transferred to the district court that approved the

settlement agreement. Baccus moved for remand, arguing that the district court lacked subject matter jurisdiction because his petition asserted exclusively state-law claims. Importantly, the face of Baccus's petition did not raise a federal question. The district court denied the motion to remand, and Baccus appealed. On appeal, the Fifth Circuit found that were Baccus to succeed in his state-court suit it would have "affected" the settlement agreement. *Id.* at 961. Therefore, the court concluded, Baccus's suit "is properly characterized as a collateral attack on the settlement agreement...." *Id.; see also Nowling*, 734 F.Supp. at 737 ("[T]his case is no more than an attempt to collaterally attack [the court's] Orders, and is possessed of the very kind of federal character sufficient to support removal.").

█ The foregoing notwithstanding, not since *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), has a federal court held, as *Baccus* did, *supra* at 960–61, that it is proper to look beyond the face of a well-pleaded complaint to determine whether removal is proper. *Baccus* and courts like it, *see, e.g., Nowling, supra*, followed an exception to the well-pleaded complaint rule—the so-called artful pleading doctrine. The purpose of this doctrine was to prevent plaintiff from avoiding federal court simply by omitting a "necessary federal question" from the complaint. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). Recently, however, the Supreme Court held that the artful pleading doctrine applies only in cases where federal law completely preempts plaintiff's state-law cause of action.[7] *See Waste Control Specialists v.*

6. This article can be found at <www.supreme.courts.state. tx.us/rules/tdr/disccle3.htm> (visited Aug. 8, 2000).

7. As an aside, the Court notes that *Baccus* is cited in the leading federal practice and procedure treatise for the proposition that when a federal court expressly retains jurisdiction

over a lawsuit, the court effectively preempts the field insofar as other litigation relating to that lawsuit is concerned. *See* 14B WRIGHT, MILLER & COOPER, § 3722.1 n. 8. Although *Baccus* does not itself speak of complete preemption, an argument can be made that where a district court retains jurisdiction over a settle-

*Envirocare of Texas, Inc.,* 199 F.3d 781, 783 (5th Cir.), superseded in part on other grounds, 207 F.3d 225 (5th Cir.2000) (construing *Rivet, supra* ). Here, it not disputed that the face of the State's petition does not raise a federal question. Accordingly, this matter does not "arise under" the laws of the United States for purposes of § 1441(b) and is not within the original jurisdiction of this Court.[8]

### III

█ Private Counsel argue that the supplemental jurisdiction statute allows this Court to exercise jurisdiction over the instant proceeding because the proceeding is related to the tobacco litigation and this Court's orders therein. The supplemental jurisdiction statute provides that in

> any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). An often-quoted case describes the supplemental jurisdiction statute as follows:

> Section 1367 allows plaintiffs to bring federal claims in federal court even though combined with state-law claims that would not otherwise be within the federal court's jurisdiction. The statute is not, however, an independent source of removal jurisdiction. To remove the petition from state court to federal court, * * * [defendants] must first find a federal claim in the Petition itself. An already-existing federal claim cannot provide the mechanism for removal of a non-removable state-court action.

ment agreement, like the court did in *Baccus* and this Court did here, it forecloses litigation in other courts. As far as this Court is aware, however, no court has expressly applied the doctrine in such a case; and without further authority, the Court is not inclined to exercise jurisdiction on that basis.

14B WRIGHT, MILLER & COOPER, § 3722 (quoting *In re Estate of Tabas,* 879 F.Supp. 464, 467 (E.D.Pa.1995)). As the Court noted above, the instant Rule 202 proceeding does not itself fall within the original jurisdiction of the district courts; the supplemental jurisdiction statute, therefore, cannot recharacterize it.

The supplemental jurisdiction statute, however, is but a subset of ancillary jurisdiction. Ancillary jurisdiction, as the Supreme Court has recognized, is a nonstatutory doctrine that has survived § 1367's enactment. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 379–80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). In *Kokkonen,* decided four years after the enactment of § 1367, Kokkonen filed suit against Guardian for breach of an agency agreement. *Id.* at 376, 114 S.Ct. 1673. The parties settled their dispute, and the terms of the settlement were read into the record. Thereafter, the district court dismissed the action with prejudice. Later, the parties disagreed on whether, under the settlement agreement, Kokkonen was required to return certain files. *Id.* at 377, 114 S.Ct. 1673. Guardian moved the district court to enforce the agreement; Kokkonen opposed on the grounds that the district court lacked subject-matter jurisdiction. The district court entered an enforcement order, concluding that it had an "inherent power" to do so. Kokkonen appealed and the circuit court affirmed. On appeal, the Supreme Court stated that the "[e]nforcement of a settlement agreement, . . . whether through award of damages or specific performance, is more than a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378, 114 S.Ct. 1673. In *Kokkonen,* there was no such basis. *Id.* at 381–82, 114 S.Ct. 1673.

8. Having concluded that this matter is not removable under the removal statute, the Court need not address § 1441's requirement that the suit be removed to the district and division embracing the state court.

The Court noted, however, that the situation is a very different one where the settlement agreement is made part of the dismissal order—"either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Id.* at 381, 114 S.Ct. 1673. In that case, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* This incarnation of ancillary jurisdiction exists "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees...." *Id.* at 380, 114 S.Ct. 1673 (citations omitted).

Although (as seen above) ancillary jurisdiction is larger in scope than its progeny, the Court concludes that ancillary jurisdiction cannot confer an independent basis for jurisdiction for the same reason that supplemental jurisdiction cannot. The touchstone of ancillary jurisdiction—and supplemental jurisdiction for that matter—is that the ancillary matter must be joined with a suit that falls within the original jurisdiction of the federal court at the time of removal. Although it runs counter the purpose of ancillary jurisdiction—that is, the efficient adjudication of related claims—courts have consistently found that a plaintiff may maintain parallel proceedings in state and federal court. Thus, plaintiff can assert a claim that falls within the original jurisdiction of the federal courts; later, plaintiff can assert a related state-law claim in state court. Under those circumstances, the latter is not removable. *See Peacock v. Thomas,* 516 U.S. 349, 354, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996).

## IV

The State argues that removal under the All Writs Act is not proper because the orders of this Court have not been implicated, and because the act cannot be used to remove an action that does not have an independent basis for jurisdiction.

## A

The All Writs Act, 28 U.S.C. § 1651(a), provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Interpreting this provision, the Supreme Court has stated that a federal court may "issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained...." *United States v. New York Tel.,* 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). In *New York Telephone,* a federal district court issued an order authorizing FBI agents to access New York Telephone's facilities. *Id.* at 161, 98 S.Ct. 364. The phone company objected, arguing that the district court lacked jurisdiction over it. *Id.* at 163, 98 S.Ct. 364. On appeal, the Supreme Court upheld the district court's issuance of the writ, stating that

[t]he power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, ... and encompasses even those who have not taken any affirmative action to hinder justice.

*Id.* at 174, 98 S.Ct. 364 (citations omitted). With respect to the facts before it, the Court noted that without New York Telephone's assistance it would have been difficult or impossible to accomplish the federal court-authorized surveillance. *Id.* at 175, 98 S.Ct. 364.

Neither the Supreme Court nor the Fifth Circuit have stated whether or how the principles announced in *New York Telephone* apply to the use of the All Writs

Act in cases where a suit without an independent basis for federal jurisdiction implicates a court-adopted settlement.[9] Several other circuits, however, have; all but one has concluded that the act may be used to remove such cases. *Compare In re Agent Orange Prod. Liability Litig.,* 996 F.2d 1425 (2d Cir.1993); *Bylinski v. Allen Park,* 169 F.3d 1001 (6th Cir.1999); *In the Matter of VMS Securities Litig.,* 103 F.3d 1317 (7th Cir.1996); *and Xiong v. Minnesota,* 195 F.3d 424 (8th Cir.1999) *with Hillman v. Webley,* 115 F.3d 1461 (10th Cir. 1997); *see also Chance v. Sullivan,* 993 F.Supp. 565 (S.D.Tex.1998); *Nowling, supra.* The leading case affirming the use of the All Writs Act is *In re Agent Orange, supra.* In that case, plaintiffs filed suit in Texas state court alleging wholly state-law claims for damages arising out of exposure to Agent Orange. 996 F.2d at 1430. Previously, a class of veterans, which included the Texas plaintiffs, had achieved a settlement with Agent Orange manufacturers; the New York federal district court before whom the class-action was pending adopted the settlement and barred class members from instituting future litigation concerning Agent Orange exposure. *Id.* at 1429. Citing the settlement and the district court's order, defendants removed the Texas state-court proceeding to the New York district court. *Id.* at 1430. Plaintiffs moved for remand, arguing that the Texas suits raised wholly state-law questions. The district court declined to remand, and the Second Circuit affirmed. The circuit court noted that where "exceptional circumstances" are present, a federal court may employ the All Writs Act to remove an otherwise unremovable action. *Id.* The court found that were the Texas plaintiffs permitted to go forward, the effect on the Agent Orange settlement would be "sub-

stantial," *id.* at 1431; by exercising jurisdiction over the Texas claim, the district court was "enforcing an explicit, ongoing order against relitigation of matters it already had decided, and guarding the integrity of its ruling in complex multidistrict litigation over which it had retained jurisdiction," *id.*

Other circuits are in substantial agreement with the Second Circuit's reasoning in *In re Agent Orange.* In *Xiong,* the Eighth Circuit, stated that "a federal court can exercise jurisdiction over a state action pursuant to the All Writs Act if the state action frustrates a previous order by the federal court." 195 F.3d at 426 (citing, *inter alia, NAACP v. Metropolitan Council,* 144 F.3d 1168 (8th Cir.1998)). In that case, Minnesota school children had filed suit alleging that the Minneapolis school system was segregated on the basis of race. *Id.* at 425. After the case settled, a federal district court entered a decree barring future litigation and retaining jurisdiction over decree's provisions. *Id.* Later, a class of Minneapolis children brought a claim "identical to those settled and released" in the previous action. *Id.* Citing the district court's orders, defendant removed the state-court action pursuant to the All Writs Act. *Id.* The district court refused to exercise jurisdiction, but the Eighth Circuit reversed, concluding that "federal court control is necessary to effectuate and prevent the frustration of the earlier consent decree...." *Id.* at 427.

Similarly, in *VMS Securities Litigation,* 103 F.3d at 1323, federal-district-court-approved settlements were entered in two securities litigation actions. Among other things, the settlements provided that the class members would release every poten-

---

**9.** The State points to a number of Fifth Circuit cases, including *In re McBryde,* 117 F.3d 208 (5th Cir.1997), as having decided the issue. In *In re McBryde* (and in the other cases cited by the State) the Fifth Circuit concluded that the All Writs Act cannot be used for removal unless jurisdiction has otherwise been obtained. *See id.* at 219. These

cases, however, have not addressed a situation (like the one at bar) where a state-court proceeding affects court orders in a case properly before a federal court. *See also* Lonny S. Hoffman, *Removal Jurisdiction and the All Writs Act,* 148 U. Pa. L.Rev. 401, 413 (stating that the Fifth Circuit has not decided the issue).

tial or asserted claim; in both, the district courts expressly retained jurisdiction over the implementation and enforcement of the settlements. *Id.* at 1320. A group of class members later filed suit in California state court, alleging that Prudential Securities used fraud and misrepresentation to induce investors to sign-off on the settlement agreement. *Id.* at 1319. Prudential removed the suit to federal court, and the investors moved to remand. The investors argued (1) that the alleged conduct was not covered by the terms of the settlement, and (2) that the conduct was based on post-settlement conduct that occurred after the class period closed. *Id.* at 1322. On appeal, the Seventh Circuit concluded that questions regarding Prudential's conduct is "inextricably intertwined with the approved class settlements and the class notice provisions." *Id.* Regarding the timing of the conduct alleged, the court stated that the investors "cannot reasonably assert that the federal district court was without power to adjudicate matters arising out of the class settlement procedures merely because Prudential's alleged conduct occurred after the close of the class periods." *Id.*

## B

■ *1.* The Court is persuaded, in light of the virtually uniform foregoing precedent, that it may exercise jurisdiction over the instant state-court proceeding pursuant to the All Writs Act. It is not disputed that this Court had jurisdiction over the tobacco litigation; and in this case, as with those above, the Court expressly adopted the final judgment and made it an enforceable order. The final judgment, in turn, adopted the CSA, the first paragraph of which expressly retained jurisdiction over all aspects of the settlement agreement. Among other things, the CSA was declared to be the product "good faith" and "arm[']s[-]length negotiations" by counsel. *See supra* at 516. Certainly, this Court would not have adopted and incorporated the above terms—or the whole CSA for that mat-

ter—if it had even an inkling of proof of attorney misconduct along the lines suggested by the State, *see supra* at 518 (suggesting, among other things, that Private Counsel agreed to represent the State in the tobacco litigation knowing that OCA was unlawful, and that Private Counsel's conduct was colored by improper self-interest). If the discovery requested by the State in its petition was to reveal evidence of self-dealing or other unethical behavior, the veracity of counsel's representations concerning the CSA (and the Court's reliance thereon) would be thrown into doubt. As such, the Court cannot conclude, the State's protestations notwithstanding, that the State's petition has nothing to do with the settlement agreement. *See Chance,* 993 F.Supp. at 567 (concluding that "[c]onsideration of the allegations [of attorney malfeasance] in this case will entail an inextricably intertwined analysis of the propriety of the Plaintiff's settlement agreement in" the underlying action); *see also VMS Securities Litig.,* 103 F.3d at 1322 (dismissing the suggestion that a federal court is powerless to address malfeasance that occurred outside the subject matter of the litigation but called into question a court-adopted settlement).

Aside from generally undermining the court-adopted settlement, the Court finds that the State's petition directly invokes several provisions of the CSA and the anti-suit injunction. First, the CSA required that Private Counsel make a good-faith approximation of their expenses in prosecuting the tobacco litigation. *See supra* at 517. Private Counsel estimated $40 million. This figure was transmitted to the tobacco industry pursuant to. court order; the industry, in turn, reimbursed Private Counsel. The State seeks to discover documents that support Private Counsel's estimation. In the event that discovery produced evidence showing that Private Counsel's purported expenses were not tabulated in good faith, Private Counsel

would be in direct contravention of this Court's orders.[10]

Second, documents and other materials produced during the course of discovery in the tobacco litigation are, by and large, under court-ordered seal. The protective orders require application to this Court prior to disclosure; any questions regarding the scope of the protective orders must be submitted to this Court for resolution. *See supra* at 517. Third, the anti-suit injunction entered by this Court proscribes litigation before any court (except this one) concerning any aspect of the final judgment. The final judgment directly addresses, among other things, Private Counsel's litigation expenses and fees and the propriety of counsel's representations concerning the CSA. Finally, the State's recovery from the tobacco industry is contingent the upon the recovery of certain other settling states and vice versa. (*See* CSA at 19–20, ¶ 17.) Were the State to prevail in an action against Private Counsel, any damages the State received conceivably would upset the parity essential to the settlement scheme.

Further, the Court believes that for wholly prudential reasons this Court is the appropriate forum to address Private Counsel's alleged misconduct. As the Court has noted before, this Court, through its work on the tobacco litigation, has had extensive experience dealing with Private Counsel. Were the State to raise the questions it has in another forum much of the record would have to be considered anew. Along the same lines, this Court is clearly in the best position to interpret the effect of its own orders, including whether records of Private Counsel's expenses are discoverable (*see* note 10, *supra* ). Finally, and most importantly insofar as this Court

is concerned, the Court has a duty to safeguard the interests of those who come before it seeking relief. This Court cannot—and will not—be left impotent while attorneys run roughshod over the rights of parties, the rules of professional responsibility, and the orders of this Court.

*2.* This Court's preceding jurisdictional analyses are akin to those in *Chance v. Sullivan,* 993 F.Supp. 565 (S.D.Tex.1998). In *Chance,* Judge Kent accepted and approved a settlement agreement that, among other things, concluded that the amount of attorneys' fees was calculated in good faith. *Id.* at 567. Thereafter, plaintiffs to the settled action brought suit against their attorneys, asserting claims for breach of fiduciary duty, common law fraud, fraud in the inducement, conversion, legal malpractice, and violations of Texas's deceptive practices act. The suit was filed in state court and alleged wholly state-law claims. The attorneys removed the action, and plaintiffs moved to remand. *Id.*

Notwithstanding Judge Kent's sentiment—which is identical to this Court's here—that "nothing would please the Court more than to send these claims back to state court," *id.* at 567, Judge Kent stated that he felt "a moral responsibility to proceed with an ultimate resolution of the issues raised by the [underlying] case and all of its ensuing outgrowths." *Id.* Specifically, Judge Kent declined to remand on two grounds. First, he noted that the resolution of plaintiffs' claims would "likely [ ] affect the scope and validity of the [underlying] settlement order." *Id.* Since the underlying case was based on a question of federal law, and because attorney-conduct questions were closely related to the underlying case, Judge Kent concluded that he could remove the case pursuant to 28 U.S.C. §§ 1441 and 1367.[11]

---

**10.** Private Counsel contend that records concerning their litigation expenses are not discoverable because the June 1998 agreement made such records undiscoverable if Private Counsel chose, as they did, to take the panel award rather than pursue OCA's contingency-fee provisions. The State, on the other hand, contends that it was not a party to the Agree-

ment. The Court expresses no opinion on this subject as the resolution of the State's motion to remand does not require it.

**11.** For the reasons stated, *supra,* the Court declines to exercise jurisdiction on these bases.

*Id.* Second, the court concluded that it could exercise jurisdiction over the state-court attorney-conduct dispute under the All Writs Act. *Id.* Judge Kent found (as this Court has here) that plaintiff's suit called "into question the propriety of a settlement approved in an Order of the Court." *Id.* at 568. Therefore, the

> exercise of jurisdiction is necessary not only to protect the integrity of the Court's Order, but also because this Court is most qualified to review the settlement and the claims arising from the handling of the litigation before the Court.

*Id.*

## C

"Removal" under the All Writs Act has recently been the subject of academic debate. *See, e.g.,* Joan Steinman, *The Newest Frontier of Judicial Activism: Removal Under the All Writs Act,* 80 B.U. L.Rev. 773 (2000); Lonny S. Hoffman, *Removal Jurisdiction and the All Writs Act,* 148 U. Pa. L.Rev. 401 (1999). In his article, Professor Hoffman argues, much as the State does here, that *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), should be read as proscribing the removal of cases that challenge a judgment or other order of a federal court. In *Rivet,* the Court held that "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under § 1441(b)." *Id.* at 478, 118 S.Ct. 921. Professor Hoffman thinks that to sidestep § 1441 and remove a state-court proceeding under the All Writs Act on the grounds that it is precluded by a federal court judgment would effectively eviscerate the Supreme Court's holding in *Rivet. See* Hoffman, *supra* at 423. There is a difference though—and Professor Hoffman points this out—between the use of the All Writs Act to remove a state-court action that threatens to undermine a federal court order, and the use of the writ to remove a state-court proceeding based on

claim preclusion. *Id.* at 414. While Hoffman argues that removal in the latter case is barred by *Rivet,* he does not so argue with respect to the former. *Id.*

In this case, the Court does not hold that the State's suggestions of malfeasance on the part of Private Counsel are barred by a prior determination of this Court. Indeed, it is just the opposite: the Court has never addressed the allegations raised by the State, nor does the Court express an opinion about them now. Rather, in light of the foregoing, the Court concludes that the State's petition initiates a discovery proceeding that, if it produces what the State thinks it will, will call into doubt the efficacy of this Court's orders. It is for this reason that the Court concludes that removal under the All Writs Act is appropriate.

## V

■ The State argues that the Eleventh Amendment proscribes removal of the instant state-court proceeding to this Court. The Eleventh Amendment provides, in relevant part, that

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state. . . .

U.S. Const. amend. XI. A straight-forward reading of the Eleventh Amendment would seem to put this controversy to rest: the amendment proscribes suits against states, not by them. The Supreme Court's reading of the Eleventh Amendment, however, has consistently exceeded the scope of the amendment's text. *See, e.g., Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 2254, 144 L.Ed.2d 636 (1999)("[A] state's immunity from suit is demarcated not by the text of the Amendment alone but by the fundamental postulates implicit in the constitutional design."). And importantly, the Court's recent jurisprudence has reflected an enhanced respect for state sovereignty. *See Port Auth. Trans–Hudson Corp. v.*

*Feeney,* 495 U.S. 299, 307, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990).

These initial observations aside, courts have consistently held that when a state brings suit as plaintiff the Eleventh Amendment is not implicated. *See, e.g.,* ▪ *Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1564 (Fed.Cir. 1997), *cert. denied,* 523 U.S. 1089, 118 S.Ct. 1548, 140 L.Ed.2d 695 (1998). Implicit in these holdings is the conclusion that where a state initiates suit the policies behind sovereign immunity—namely, that states not suffer the indignity of being subjected to the "coercive process of judicial tribunals at the instance of private parties," *Alden,* 119 S.Ct. at 2264, and that a state not be "thrust, by federal fiat and against its will, into the disfavored status of a debtor," *id.*—are not implicated. Thus, while the Supreme Court's recent decisions have articulated an expanded concept of state sovereign immunity, they have left unchanged the well settled proposition that a state may waive its Eleventh Amendment immunity by voluntarily invoking the jurisdiction of the federal court, either by defending an action in federal court on its merits or by "voluntarily submitting its rights to judicial determination" in federal court. *See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999); *see also Hill v. Blind Indus. & Servs. of Md.,* 179 F.3d 754 (9th Cir.1999)(holding that participation in extensive pretrial activities sufficient to waive Eleventh Amendment immunity); *Sutton v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226 (10th Cir.1999)(concluding that removal followed by a defense on the merits sufficient to waive the state's Eleventh Amendment immunity); *In re Platter,* 140 F.3d 676, 680 (7th Cir.1998)(stating that when a state voluntarily enters a federal forum by filing a claim, "it cannot run back to seek Eleventh Amendment protection"). In this case, the State chose to initiate the tobacco litigation in this Court, and nowhere is it argued that it was unlawful for the State to do so. Accordingly, the State has waived its sovereign immunity for purposes of this litigation.

Notwithstanding the foregoing, the State argues that even if it did consent to adjudication in this Court, removal of the instant state-court proceeding is prohibited. In support of its argument, the State points to *California v. Steelcase, Inc.,* 792 F.Supp. 84 (C.D.Cal.1992). In *Steelcase,* the State of California filed a civil enforcement action in state court and defendant removed on several bases. *Id.* at 85. The state moved for remand, which the court granted. The court, without citing any authority, concluded that a state's Eleventh Amendment immunity from suit should apply equally to the case where the state is a plaintiff in a state-court action that is removed to federal court. *Id.* at 86. The Court notes that most courts have declined to follow *Steelcase. Compare Regents of Univ. of Minn. v. Glaxo Wellcome, Inc.,* 58 F.Supp.2d 1036, 1040 (D.Minn.1999); *Kansas ex rel. Stovall v. Home Cable, Inc.,* 35 F.Supp.2d 783 (D.Kan.1998); *Vermont v. Oncor Comm., Inc.,* 166 F.R.D. 313, 321 (D.Vt.1996); *and South Dakota State Cement Plant Comm'n v. Wausau Underwriters Ins. Co.,* 778 F.Supp. 1515, 1522 (D.S.D.1991) *with Moore ex rel. State of Miss. v. Abbott Laboratories, Inc.,* 900 F.Supp. 26, 30 (S.D.Miss.1995). But even were the Court to follow *Steelcase,* it would not affect this Court's finding that the State, when it initiated litigation in this Court, waived its sovereign immunity with respect the tobacco litigation and all of its outgrowths. Accordingly, the Court concludes that the Eleventh Amendment does not preclude removal of the State's petition.

### CONCLUSION

For the foregoing reasons the State's motion to remand is DENIED.